IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID LYNN COLLINS,
  Petitioner,

vs.          Case No. 3:09cv117/LAC/EMT

EDWIN G. BUSS,
  Respondent.
_____/

## REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 5). Respondent filed an answer and relevant portions of the state court record (doc. 17). Petitioner filed a reply (doc. 40).

  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

  The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* doc. 17, Exhibits).[1] Following a jury trial in the Circuit Court in and for Escambia County, Florida, Petitioner was found guilty of one count of conspiracy to traffic in cocaine (28 grams or more but less than 200 grams) (Count I), one count of trafficking in cocaine

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(28 grams or more but less than 200 grams) (Count II), and one count of purchase or possession with intent to purchase a controlled substance (cocaine) (Count III) (Exs. C, D).  Petitioner was adjudicated guilty and sentenced to concurrent terms of forty-two (42) months of imprisonment on Counts I and II, with a three-year mandatory minimum as to each count and with pre-sentence credit of one day, to be followed by a probationary period of ten (10) years (Exs. F, G).  The trial court granted Petitioner's unopposed motion to vacate the conviction on Count III (*see* Ex. F at 80, 90).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA").  The First DCA affirmed the judgment per curiam without written opinion on January 27, 2006 (Ex. M).  Collins v. State, 922 So.  2d 197 (Fla. 1st DCA 2006) (Table).  Petitioner filed a motion for clarification, which the First DCA denied on February 22, 2006 (Exs. N).  Petitioner did not seek further review.

On May 22, 2007, Petitioner filed, through counsel, a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O).  The state circuit court summarily denied the motion on December 18, 2007 (Ex. Q).  Petitioner appealed the decision to the First DCA.  On January 22, 2009 the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing March 20, 2009 (Ex. V).  Collins v. State, 3 So. 3d 1248 (Fla. 1st DCA 2009) (Table).

On March 10, 2008, while Petitioner's Rule 3.850 motion was pending, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel (Ex. X).  The First DCA denied the petition on the merits on January 22, 2009, and denied Petitioner's motion for rehearing on March 5, 2009 (Exs. BB, CC).

Petitioner filed the instant federal habeas action on March 20, 2009 (doc. 1).  Respondent concedes that the petition is timely (doc. 17 at 2–7).

II.     STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254(d) provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237 (11th Cir. 2011); see Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Dicta in opinions is not controlling. Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010). A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point. Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To be entitled to deference, the state court decision need not cite to Supreme Court case law. As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.

2001).   A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419.   Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.   *See* Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).   The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)

(holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications.  Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011).  However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti, 551 U.S. at 953.  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

    A.   Ground One:  "Defense counsel rendered ineffective assistance of counsel under *Strickland* by failing to either move to dismiss or move for a judgment of acquittal

<u>specifically arguing that the State cannot aggregate the amount of cocaine transactions when the State has failed to prove that a defendant specifically intended to sell, purchase, deliver, or possess a total of 28 grams or more of cocaine at different times (as is necessary to establish the offense of trafficking); for all of these same reasons, defense counsel was also ineffective for failing to request a special jury instruction and failing to object to the prosecutor's closing argument."</u>

Petitioner contends his trial counsel performed ineffectively by failing to argue for dismissal of or acquittal on the conspiracy and trafficking counts on the ground that the State's aggregation of the amounts of separate cocaine transactions (two personal-use purchases of 1.4 grams and 3.5 grams and assisting the delivery of an amount approximating one ounce) to achieve the 28-gram trafficking threshold was insufficient as a matter of law (doc. 5 at 9–18). Petitioner concedes that defense counsel made a motion for judgment of acquittal ("JOA") in which he argued the State failed to prove the transactions amounted to 28 grams or more, and, therefore, the State failed to prove Petitioner's intent to traffic cocaine (*id.* at 10, 14–16 and n.5). However, Petitioner faults counsel for not making the specific arguments that (1) the State failed to prove Petitioner specifically intended to purchase or deliver a total of more than 28 grams at different times, or (2) the State could not aggregate amounts from different transactions to reach the 28-gram trafficking threshold (*id.* at 10–16 and n.5).

Petitioner argues he was prejudiced by counsel's alleged error, because if counsel had preserved the issue for appeal, his convictions for conspiracy to traffic and trafficking would have been reversed (*id.* at 10–17). In support of this argument, Petitioner cites <u>Switzer v. State</u>, 940 So. 2d 1248, 1248 (Fla. 1st DCA 2006) and <u>Pallin v. State</u>, 965 So. 2d 1226 (Fla. 1st DCA 2007), both cases involving Petitioner's co-defendants (*id.* at 10–12, 16–18).[3] Petitioner contends the facts in

---

[3] In <u>Switzer</u>, the defendant was convicted of one count of conspiracy to traffic in cocaine and two counts of possession of cocaine. 940 So. 2d at 1248. He challenged his conspiracy conviction on the ground that the State failed to present sufficient evidence demonstrating his intent to purchase 28 grams or more of cocaine over the course of several years. *Id.* The State argued that aggregating Switzer's cocaine purchases over the course of several years supported the conspiracy to traffic charge. *Id.* The First DCA agreed that cocaine buys may be aggregated where the defendant specifically intended to purchase a total of more than 28 grams of cocaine at different times, but the court disagreed that sufficient evidence was presented to establish that Switzer formed such intent. *Id.* The court opined that the evidence supported a finding that Switzer was merely a user of cocaine who engaged in multiple buys over the course of several years, which was insufficient to support a conspiracy to traffic charge. *Id.* The First DCA reversed Switzer's conspiracy conviction and remanded with instructions to enter a conviction for the lesser included offense of conspiracy to sell, manufacture, or deliver cocaine. *Id.*

his case were analogous to the facts in <u>Switzer</u> and <u>Pallin</u>, and if counsel had preserved the aggregation issue for appeal, Petitioner would have received the same result, namely, reversal of his trafficking and conspiracy convictions (*id.* at 10–12, 16–18).

Petitioner additionally argues defense counsel was ineffective for failing to object to the prosecutor's closing argument in which the prosecutor argued to the jury that the 28-gram trafficking threshold could be met by combining the amounts from the different transactions (*id.* at 10, 12–13, 16–18).

Respondent states that although it appears Petitioner may have exhausted this claim, it is not waiving the exhaustion defense (doc. 17 at 25).   Respondent contends Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 23–42).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir.

---

In <u>Pallin</u>, the defendant appealed his conviction for conspiracy to traffic in cocaine.  965 So. 2d at 1226.  The offense was based on Pallin's possession or purchase of cocaine from two cocaine suppliers over an 11-month period.  *Id.*  Because each transaction involved less than 28 grams of cocaine, the First DCA reversed his conviction and directed the lower court to enter a judgment on the lesser-included charge of conspiracy to purchase or possess cocaine with the intent to purchase.  *Id.* at 1226–27.

2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698, 104 S. Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his amended Rule 3.850 motion (Ex. P at 21–23).  The state circuit court correctly identified the Strickland standard as the controlling legal standard in its written decision (Ex. Q at 35).  As to counsel's alleged failure to include the aggregation argument in his motion for JOA, the court found as fact that defense counsel did make a motion for JOA based on the aggregation of the quantities of cocaine in each transaction, and the trial court denied the motion (*id.* at 37).  With regard to counsel's failure to request a special jury instruction and object to the prosecutor's closing argument, the court determined that under Florida law, the State may use the weights of separately wrapped packets of cocaine, or a mixture containing cocaine, that in the aggregate satisfy the statutory weight to support a charge of trafficking in cocaine (*id.*).  Therefore, counsel was not ineffective for failing to request an instruction stating that amounts could not be aggregated, and counsel similarly had no legal basis to object to the prosecutor's aggregation argument during the closing argument (*id.*).

Additionally, the court set forth the elements of trafficking in cocaine:  a defendant commits the crime of trafficking in cocaine when he "knowingly sells, purchases, manufactures, delivers, or brings into this state, or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine . . ." (*id.* citing Fla. Stat. § 893.135(1)(b)(1) (2003)).  The court determined that the

evidence presented at trial established that Petitioner purchased a 3.5 grams bag of cocaine and a 1.4 grams bag of cocaine and at least assisted in the delivery of approximately 28 grams of cocaine (in an Airborne Express package), which satisfied the elements of trafficking (*id.*).

The court also determined that Petitioner's argument that counsel's performance prejudiced him on appeal was insufficient to satisfy Strickland, because prejudice must be measured by the effect on trial, not appeal (*id.*). The court thus concluded that Petitioner failed to satisfy either prong of the Strickland standard (*id.* at 37–38).

Petitioner included this issue in his initial brief on appeal of the circuit court's denial of his motion (Ex. S). The First DCA affirmed the decision without written opinion (Ex. V).

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Petitioner contends the state circuit court's factual determination that counsel sufficiently argued the aggregation issue in support of his motion for JOA is unreasonable, as evidenced by the trial transcript (doc. 5 at 13–17). The trial transcript shows that defense counsel argued the following in support of his motion for JOA on the conspiracy and trafficking counts:

> MR. PINKERTON [defense counsel]: . . . Your Honor, at this time the defense would move for a judgment of acquittal on counts 1 and 2. And I would like to site [sic] Mickenberg vs. State first of all. It's a Second District case at 640 So.2d 1210. It is a conspiracy to traffic in cocaine case in which Mr. Mickenberg attacked his conviction for conspiracy to traffic in more than 400 grams.

It stands for—the Court can review the facts, but it stands for the proposition in this case he was essentially a mule.  There were 4 people involved completely in the conspiracy that was alleged here.

He argued that the State had failed to show an expressed or implied agreement between 2 or more persons to commit a criminal offense, and the conspiracy involves more than aiding and abetting.  It says the crime of conspiracy consists of express or implied agreement between 2 or more persons to commit a criminal offense.   To prove the crime of conspiracy the State must prove an agreement and an intention to commit an offense.  Mere presence at the scene is insufficient to establish a conspiracy.  It's a distinct crime from the offense, which is the subject of the conspiracy.

Also in <u>Calabrese versus State of Florida</u>.[4]  This opinion is not final yet.  It was handed down November 15th.

THE COURT:  I am familiar with the case.

MR. PINKERTON:  Okay.

THE COURT:  It was given in my last week's trial.

MR. PINKERTON:  Essentially—and this case I am assuming that this is the same scenario that's alleged also to be a conspiracy in count 1.  I am a little unclear as to the 2 counts.

However, I feel that it is an absolute necessity that they prove 28 grams or more.  And the testimony from both Mr. Murphy and Mr. Seale indicates that they have used the term ounce, ounce, ounce, but neither one of them can say nor have any recollection that this was 28 grams or 27.9 grams or 26 grams.

Obviously we have no motion as to count 3.  In fact, the Court can probably instruct the jury that they should have only one verdict to return on count 3.  But I don't believe there's been any agreement that would rise to the level necessary to

---

[4] In <u>Calabrese</u>, the First DCA held that the trial court fundamentally erred by failing to give an "independent act" special jury instruction in conjunction with the instruction on conspiracy to traffic in cocaine; with the instruction, the jury could have found that although the defendant and a co-defendant conspired to purchase cocaine, the co-defendant acted independently in deciding to buy a greater weight of cocaine, thereby meeting the statutory requirements for trafficking, than the amount to which the defendant had agreed or conspired to buy.  886 So. 2d 396, 398–99 (Fla. 1st DCA 2004).  The court additionally held that instructing the jury that it could find that the defendant conspired with a co-defendant to purchase 28 grams or more of cocaine, with the purchase to be committed "by some other person," was erroneous, given the record evidence that the conspiracy to purchase, if any, involved only the co-defendant and defendant.  *Id.* at 399.  In Petitioner's case, the jury was instructed in compliance with <u>Calabrese</u>.

constitute a conspiracy.  And I do not believe that they have proved any more than perhaps the aiding and abetting of the delivery of some amount of cocaine.

(Ex. C at 168–71).

The prosecutor responded:

Judge, as you well know the conspiracy is an agreement crime.  The trafficking, as has been charged, would include the purchase or the delivery or the possession of cocaine.  In this case just on that date alone, the defendant purchased 3.5 grams, and in addition delivered 28 grams.  Even if it's 27.9 or 28.1.  Even though those two cocaine amounts were in separate packages those amounts—there is no reason under the law why those two amounts cannot be aggregated.

For that matter it actually could relate to all 3.  But if I just strictly limit it to that point and use Mr. Pinkerton's line of reasoning, then it would appear that somebody who purchases 27 grams of cocaine per day, every day for a year could not be convicted of trafficking or conspiracy to traffic because there's separate amounts in and of themselves wouldn't [sic] constitute a trafficking offense even though it would come out to well over 400 grams.
. . . .
The essence of a conspiracy is the agreement with the intent to commit an offense, in this case trafficking.  Trafficking only requires and how it's been charged is either the purchase or delivery or have actual or constructive possession.  By either method, either the purchase of the 3.5 on that day or by the delivery, trafficking does not require the State to prove that the defendant had knowledge of the amount of the substance.

It would be the same thing as if when we get these regular cases in of Cannabis, and if it's 20 grams or more, it's a felony, if it's less than 20 grams, it's a misdemeanor.  If the amount is 21 grams, they are arrested and charged with a felony.

The defense of, "I didn't know it was 21 grams I thought it was just 19," that doesn't cut it and that's not a defense.  Same thing applies to cocaine.  The State has to prove it was cocaine.  The State has to prove that the defendant knew it was cocaine.  In this case, he knew what was in the package.  And the State has to prove the amount.  That's it.

The fact that there may have been not a lot of evidence that Mr. Collins knew the amount of cocaine in the package is completely irrelevant for purposes of a JOA. It just goes to what elements need to be satisfied.  Was there an agreement? The tape speaks for itself.  And I would submit it's a jury question.

Was there cocaine involved?  Again, that's not even an issue here [the parties stipulated that the substance was cocaine].  Was it 28 grams or more?  This information does not limit what is just in the package to counts 1 and 2.  It is a continuing offense as it relates to conspiracy between 10/5/03 to December 8.  Trafficking is also charged between 10/5/03 and the same date, theoretically be [sic] all inclusive.

Now, Mr. Pinkerton does bring up a point whether count 3 is somehow assumed [sic] into count 2.  What I would suggest is count 2—I mean count 3 can be a conviction just based on the possession with intent to purchase, that is the payment of the $70 for the 1.4 grams.  Or to consider everything, a jury can come back and find him guilty of all 3 counts, and the Court can convict for the highest charges offenses, in this case counts 1 and 2.

(*id.* at 171–74).

Defense counsel responded:

Well, 3 points basically.  The State is inconsistent in its own charging document in that on one hand it's trying this new and novel approach for which I know of no precedent, this aggregation theory of amounts.  And yet at the same time they separate out by adding a count 3, which presumably is the cocaine—the 3.5 grams of cocaine that were purchased on November 12, which seems to be inconsistent with their aggregation theory.  I am not arguing that he had to know it was 28 grams.  I am arguing they have failed to prove that it was 28 grams.

And lastly, as it deals with intent—the issue of intent on both counts 1 and 2.  Just for the record, the intent may be and in fact usually is shown largely by circumstantial evidence.  But if the proof of intent rests solely on circumstantial evidence, as I submit that it does here, the proof must be not only consistent with guilt of the accused but also inconsistent with any other reasonable hypotheses, . . .

So that's where we are and that's where I think the state of the law is.  Particularly in view of the derth [sic] of the evidence here as it relates to intent on either count 1 and 2.  I think there's virtually no showing of intent.

(*id.* at 174–75).

The transcript does not clearly and convincingly establish that defense counsel failed to make the <u>Swtizer-Pallin</u> argument, that is, that the aggregation of cocaine amounts from drug transactions during the period of the charged conspiracy was insufficient to demonstrate the defendant's intent to purchase, deliver, or possess 28 grams or more of cocaine.  *See* <u>Switzer</u>, 940 So. 2d at 1248.  Therefore, this court must defer to the state court's factual finding that counsel made the argument

that Petitioner faults him for not making.  Based upon the state court's factual finding, Petitioner failed to demonstrate counsel performed deficiently in arguing the motion for JOA.

With regard to counsel's failure to request that the jury be instructed that amounts from multiple transactions may not be combined or aggregated to reach the trafficking threshold, the state court found that such an instruction was contrary to Florida law.  For the same reason, the court rejected Petitioner's contention that defense counsel should have objected to the prosecutor's statement during closing argument that the amounts of cocaine involved in the drug transactions could be combined to reach the 28-gram threshold.

The Supreme Court has repeatedly held that a state court's interpretation of state law binds a federal court sitting in habeas corpus.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602 (2005) (citation omitted).  In light of the state court's interpretation of Florida law (that aggregation is permitted), it was not unreasonable for the court to concomitantly conclude that Petitioner failed to show that counsel performed unreasonably by failing to request a special instruction regarding aggregation or object to the prosecutor's aggregation argument to the jury.

Based upon the foregoing, Petitioner has failed to show that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.[5]

> B.     Ground Two:  "Petitioner's State court appellate counsel was ineffective under *Strickland* for failing to raise the issue (preserved or not) that the State may not aggregate the cocaine weights from several purchases of personal use cocaine on different occasions in order to prove conspiracy to traffic or trafficking in cocaine."

---

[5] Even if the state court's decision was not entitled to deference under the AEDPA, the undersigned concludes Petitioner failed to satisfy the Strickland standard.  Petitioner concedes "Florida law . . . changed in favor of Petitioner's argument" upon issuance of the First DCA's decisions in Switzer and Pallin (*see* doc. 40 at 10), but that change occurred after Petitioner's trial and appeal.  Petitioner's trial was held November 23, 2004; his sentencing occurred on January 26, 2005; and his direct appeal concluded March 10, 2006, upon issuance of the First DCA's mandate (*see* Exs. E, F, M).  Switzer was decided November 3, 2006, and Pallin was decided September 28, 2007.  Trial counsel's failure to predict a change in the law does not constitute deficient performance.  *See* Herring v. Sec'y, Dept. of Corr., 397 F.3d 1338, 1352 (11th Cir. 2005); United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (citing Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994); Davis v. Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995); Pitts v. Cook, 923 F.2d 1568, 1572–74 (11th Cir. 1991); Thompson v. Wainwright, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986)).  This is true even when the change is such that the forfeited issue was, in hindsight, a "sure fire winner."  Ardley, 273 F.3d at 993 (citing Wright v. Hopper, 169 F.3d 695, 707–08 (11th Cir. 1999) (Batson issue); Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir. 1987) (Michigan v. Mosley issue); Thompson, 787 F.2d at 1459 n.8 (Ake issue)).  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

Petitioner claims that his appellate counsel performed ineffectively by failing to argue, as either preserved or fundamental error, that aggregating the amounts of cocaine involved in drug transactions on different occasions is insufficient to support a conviction for trafficking or conspiracy to traffic (doc. 5 at 18–19).  He contends if counsel had argued this issue, his appeal would have been successful, as evidenced by the First DCA's decisions in Switzer and Pallin and long-standing federal case law holding that aggregation from "buy-sell" transactions is impermissible to prove conspiratorial intent to traffic or possess with intent to traffic a controlled substance ("Switzer-Pallin argument") (*id.* at 19–21).

Respondent contends Petitioner appears to have exhausted only one aspect of his argument, namely, that appellate counsel was ineffective for failing to argue the aggregation issue which was preserved by trial counsel's motion for JOA (doc. 17 at 43–47).  Respondent contends Petitioner did not ask the First DCA to consider (1) whether appellate counsel was ineffective for arguing the aggregation issue as fundamental (unpreserved) error, or (2) whether appellate counsel was ineffective for failing to include the federal case law argument (*id.*).  Respondent therefore contends those two aspects of Ground Two are unexhausted and procedurally barred (*id.*).

As to the argument that appears to have been exhausted, Respondent contends appellate counsel could not be deemed ineffective for failing to anticipate the holdings of Switzer and Pallin (*id.* at 47–51).  Respondent contends at the time appellate counsel filed the initial brief, April 25, 2005, with no case law to support the Switzer-Pallin argument, the argument was not clearly stronger than those challenges to the sufficiency of he evidence that appellate counsel raised (*id.* at 52–53).  Therefore, appellate counsel's failure to argue that aggregation of "personal use" quantities is not permitted to reach the 28-gram threshold, instead of or in addition to the challenges to the sufficiency of the evidence as to the conspiracy and trafficking charges that were presented, was objectively reasonable (*id.*).

Additionally, Respondent argues the facts of Petitioner's case distinguished it from Switzer and Pallin because the evidence was sufficient to show Petitioner knowingly and actively participated in the delivery of 28 grams of cocaine (*id.* at 53–63).  Therefore, Petitioner failed to establish a reasonable probability of success on appeal had counsel made the Switzer-Pallin argument (*id.*)

1.      Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). As previously noted, the two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.      Federal Review of State Court Decision

In Issue I of Petitioner's state habeas petition, he argued appellate counsel was ineffective for failing to "raise the preserved issue that the State may not aggregate the weights from several purchases of cocaine in order to prove conspiracy to traffic or trafficking in cocaine" (Ex. X).  The First DCA denied the petition on the merits (Ex. BB).  The First DCA did not cite Strickland; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).

The First DCA's decision could have been supported by the argument that appellate counsel's failure to brief the Switzer-Pallin issue (that aggregation of the weights from several cocaine transactions is insufficient to prove conspiracy to traffic or trafficking in cocaine) was not unreasonable, since there was no case law supporting this argument at the time of Petitioner's direct appeal.  This argument is consistent with the holdings of prior Supreme Court cases.  See Strickland, 466 U.S. at 69 ("Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); see also Herring, 397 F.3d at 1352; Ardley, 273 F.3d at 993.

The First DCA's decision could have also been supported by the argument that the facts of Petitioner's case were distinguishable from the facts of Switzer and Pallin, as set forth in the State's response to Petitioner's claim of ineffective assistance of appellate counsel (see Exs. Y, Z).  Therefore, Petitioner failed to demonstrate a reasonable probability of success on appeal had counsel made the Switzer-Pallin.

Moreover, to the extent Petitioner contends appellate counsel should have briefed an issue that was not preserved by the motion for JOA, he is not entitled to relief.[6]  Where an issue is not preserved at trial, appellate counsel's failure to raise it is not deficient.  See Diaz, 402 F.3d at 1142; Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

---

[6] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Petitioner has failed to demonstrate that the First DCA's denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal relief on Ground Two.

C.     Ground Three:  "Defense counsel rendered ineffective assistance of counsel under *Strickland* by failing to argue to the jury that the State did not prove that Petitioner Collins had possession of Mr. Seale's package of cocaine."

In Ground Three, Petitioner contends counsel should have argued to the jury that the State failed to prove Petitioner had possession of Jackie Seale's package of cocaine (the Airborne Express package) (doc. 5 at 22–24).  Petitioner argues that one of the underlying and aggregated drug transactions relied upon by the State to prove the trafficking and conspiracy to traffic offenses involved Petitioner's alleged involvement with a package of cocaine being shipped by Mr. Seale to Robert Murphy via Airborne Express (*id.*).  Petitioner contends the evidence at trial established only that he was in the presence of the package, not that he was in either actual or constructive possession of it, which is legally insufficient to establish actual or constructive possession (*id.*).  Petitioner states he presented this claim in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (*id.* at 24–25).  He contends the state circuit court erred by summarily denying it, because his claim was facially valid and the record did not conclusively refute it (*id.* at 24–26).  He contends the First DCA compounded the error by affirming the lower court's decision (*id.*).

Respondent concedes Petitioner presented this claim to the state courts, and states, "it appears that Petitioner may have exhausted this claim," but Respondent expressly preserves the exhaustion defense (doc. 17 at 64, 69).  Respondent contends Petitioner is not entitled to relief because the only error of the state circuit court he identifies in Ground Three is its summarily denying Petitioner's claim without attaching portions of the record which conclusively refuted it (*id.* at 70–71).  Further, the only error of the state appellate court he identifies is the court's failure to follow state law by requiring the circuit court to attach portions of the record that conclusively refute his claim (*id.* at 71).  Respondent contends these alleged errors do not provide a basis for federal habeas relief (*id.* at 72–73).

1.     Clearly Established Federal law

As previously discussed, the clearly established federal standard governing claims of ineffective assistance of counsel is the <u>Strickland</u> standard.

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground 4 in his amended Rule 3.850 motion (Ex. P at 26–27). The state circuit court summarily denied the claim (Ex. Q at 39–40). In its written order, the court cited the legal rule that it is the jury's province to determine the weight of the evidence and make its findings accordingly (*id.* at 39). The court found as fact that the jury heard the following evidence regarding Petitioner's possession or lack of possession of cocaine:

> Seale testified that Defendant "gave him a ride" to drop off the Airborne package (that contained the twenty-eight grams of cocaine), that the "package was with him in the car," and that he "put the package in the Airborne Express drop box." Seale also testified that Defendant offered to drop off the Airborne Express package, that he told Defendant his fingerprints did not need to be on the bag (that Seale was packaging the ounce of cocaine in), that Seale double bagged the cocaine, that Defendant said "it looked professional," and that Seale and Defendant conversed while this was occurring.

(*id.* at 39–40). The court found that having heard this evidence, the jury found that Petitioner conspired to traffic in 28 grams or more of cocaine and had trafficked in 28 grams or more of cocaine, as evidenced by their verdict (*id.* at 40). The court concluded that Petitioner failed to demonstrate that the outcome of his trial would have been different if counsel had argued in closing that the State failed to prove possession (*id.*).

Petitioner appealed the decision to the First DCA and included this issue in his initial brief (Ex. S). The First DCA affirmed the decision without written opinion (Ex. V).

Initially, to the extent Petitioner challenges the summary manner in which the state court disposed of his claim, he has failed to state a cognizable habeas claim. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* <u>Quince v. Crosby</u>, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas

relief."); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding, with regard to § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion, that claim "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"). Therefore, to the extent Petitioner's claim challenges only the process afforded him in the state collateral review proceeding and does not present a constitutional challenge to his confinement, it does not provide a basis for federal habeas relief.

To the extent Petitioner presents a substantive challenge to the state court's denial of his claim, he has failed to show he is entitled to relief under § 2254(d). Petitioner does not dispute the state court's findings as to the testimony adduced at trial. Further, the trial transcript confirms that Jackie Seale provided the testimony as described by the state circuit court (Ex. C). Additionally, the trial transcript demonstrates that defense counsel argued the possession issue to the jury:

> All he did was give him a ride in his car. He didn't possess the package. He didn't have control of the package. He didn't get out of the car and drop the package in the box. He drove Jackie Seale to the Airborne Express drop. That's all he did, period.
> . . . .
> I want you to be aware of a couple of definitions.
> . . . .
> Possess, means to have personal charge of or exercise the right of ownership, management or control over the thing possessed.
>
> Possession may be actual or constructive. Actual means you got it in your hand. Mere proximity to a thing is not sufficient to establish control over that thing when the thing is not in the place over which the person has control. Jackie Seale has got it in an envelope. It's in his hand.

(*id.* at 200, 227).

Moreover, the jury was instructed as follows regarding possession:

> To "possess" means to have personal charge of or exercise the right of ownership, management or control over the things possessed.
>
> Possession may be actual or constructive.
>
> Actual possession means the things [sic] is in the hand of or on the person; or the thing is in the container in the hand of or on the person; or the thing is so close as to be within ready reach and is in [sic] under the control of the person.

Mere proximity to a thing is not sufficient to establish control over that thing when a thing is not in a place over which a person has control.

Constructive possession means the thing is in place [sic] where the person has control or in which the person has concealed it.

If the thing is in a place over which the person does not have control, in order to establish constructive possession the State must prove the person's (1) control over the thing, (2) knowledge that the thing was within the person's presence, and (3) knowledge of the illicit nature of the thing.

Possession may be joint, that is, 2 or more persons may jointly have possession of an article, exercising control over it.  In that case, each of those persons is considered to be in possession of that article.

If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.

If a person does not have exclusive possession of the thing, knowledge of its presence may not be inferred or assumed.

(Ex. C at 243–44).

In light of the trial testimony, defense counsel's argument on the possession issue during closing, and the instructions to the jury, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance claim, based upon counsel's alleged failure to argue to the jury that the State failed to prove possession of Seale's package of cocaine, was contrary to or an unreasonable application of Strickland.  Therefore he is not entitled to relief on Ground Three.

 D. Ground Four:  "Defense counsel rendered ineffective assistance of counsel under *Strickland* by failing to depose Mr. Seale prior to trial and failing to properly cross-examine him at trial."

Petitioner claims that his trial counsel performed ineffectively by failing to depose Jackie Seale regarding his practice of short-changing customers in his drug transactions (doc. 5 at 26).  He further claims that counsel should have brought out the short-changing information on cross-examination at trial (*id.*).  Petitioner asserts that in a separate case involving Mr. Seale, another defense attorney deposed Seale, and Seale acknowledged that he generally short-changed customers in his drug sales (i.e. if the customer asked for 28 grams, Seale's habit was to routinely provide him or her less than 28 grams).  Petitioner contends if counsel had elicited this testimony from Seale

during his trial, it would have strengthened the defense, because it was specific evidence demonstrating that the cocaine contained in the Airborne Express package weighed less than 28 grams (*id.* at 27).  Petitioner states he raised this claim in his Rule 3.850 motion.  He then repeats his argument from Ground Three that the state circuit court erred by summarily denying it, because his claim was facially valid and the record did not conclusively refute it (*id.* at 28).  He contends the First DCA compounded by the error by affirming the lower court's decision (*id.*).

Respondent concedes Petitioner presented this claim to the state courts, and states, "it appears that Petitioner may have exhausted this claim," but Respondent expressly preserves the exhaustion defense (doc. 17 at 73–74, 77).  Respondents contends the state court reasonably applied Strickland by denying Petitioner's claim on the ground that Petitioner's speculation that Seale's testimony would have been admitted, and the jury would have come to a different conclusion, was insufficient to demonstrate deficient performance or prejudice (*id.* at 74).  Respondent additionally argues a conviction for conspiracy to traffic in cocaine did not require proof that the precise amount of cocaine inside the package was 28 grams or more; Florida law only requires that the conspirators intended it to be 28 grams or more (*id.* at 75).  Furthermore, the undisputed evidence at trial showed that the intended recipient of the package was Seale's business partner, Robert Murphy, not a customer (*id.*).  Moreover, defense counsel's strategy of focusing on the accuracy of the scale Seale used to weigh the cocaine and the manner in which he calibrated it was a reasonable strategy (*id.*).  Respondent therefore contends Petitioner failed to demonstrate entitlement to federal relief on this claim.

### 1. Clearly Established Federal Law

As previously discussed, the clearly established federal standard governing claims of ineffective assistance of counsel is the Strickland standard.

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground 5 in his amended Rule 3.850 motion (Ex. P at 27–28).  The state circuit court determined that Petitioner's claim was speculative as he failed to prove that testimony that Seale short-changed customers would have been admitted into evidence, or that the jury would have come to a different conclusion based upon this evidence (Ex. Q at 40–41).  The

court held that Petitioner failed to prove deficient performance and prejudice under <u>Strickland</u> (*id.* at 41).

Petitioner appealed the decision to the First DCA and included this issue in his initial brief (Ex. S).  The First DCA affirmed the decision without written opinion (Ex. V).

As previously noted, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington</u>, 131 S.Ct. at 786 (citation omitted).  Indeed, "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Id.* at 788 (citations omitted) (internal quotation marks omitted).  Additionally, the law regarding a habeas petitioner's complaints concerning uncalled witnesses is applicable to Petitioner's claim of un-elicited testimony:  "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  <u>United States v. Guerra</u>, 628 F.2d 410, 413 (5th Cir. 1980) (citing <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)).[7]

Upon review of the state court record, the court notes that Petitioner failed to provide the post-conviction court with any evidence to support his assertion as to the content of Mr. Seale's alleged deposition testimony in the other criminal case.  All the court had was what Petitioner said Seale stated during his deposition.  Additionally, as Respondent points out, the undisputed evidence at trial showed that the intended recipient of the package was not a customer, but Seale's business partner, Robert Murphy (Ex. C at 69–110), which diminishes the probative value of the "short-changing" testimony in establishing that the weight of the package sent to Murphy was less than 28 grams.  Moreover, defense counsel's focusing his cross-examination of Seale on the accuracy of the scale he used to weigh the cocaine and the manner in which he calibrated the scale, was a reasonable strategy of creating doubt as to the weight of the cocaine in the package.  Petitioner is not constitutionally entitled to error-free representation; he is entitled to reasonably professional

---

[7] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

assistance.  *See* Strickland, 466 U.S. at 689; Lancaster, 880 F.2d at 375.  In this case, Petitioner failed to demonstrate that the state court's adjudication of his claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal relief on Ground Four.

> E.     Ground Five: "Defense counsel rendered ineffective assistance of counsel by failing to object/move for a continuance when the State introduced a different quality audio tape than that disclosed in pretrial discovery."

Petitioner contends defense counsel should have objected or moved for a continuance when the State introduced a different kind and quality of tape recording than the recording disclosed to Petitioner and counsel in pre-trial discovery (doc. 5 at 29).  Petitioner states prior to trial, the State disclosed a videotape of Petitioner's visit to Mr. Seale's house; however, the audio portion of the videotape was of very poor quality and largely unintelligible (*id.*).  Petitioner states at trial the State, for the first time, introduced a separate audiotape to supposedly coincide with the videotape; however, the audiotape was much clearer than the audio disclosed on the videotape, and the formerly inaudible portions of the conversation between Petitioner and Seale could be heard for the first time at trial (*id.*).  Petitioner claims that as a result of the late disclosure, it was too late for Petitioner and defense counsel to confer and defend against the audiotape (by presenting evidence or witnesses to refute the statements made on the tape).  He further asserts that if he had heard the intelligible portions of the tape prior to trial, he would have prepared to testify to explain or refute the statements heard on the audio tape (*id.* at 29–30).  Petitioner contends counsel should have objected to introduction of the audiotape, and if counsel had done so, the trial court would have denied admission of the audiotape or granted a continuance (*id.* at 30).  Petitioner argues the Florida courts have found due process violations where the State suddenly disclosed evidence at trial, there was no indication in the record as to why it was not disclosed prior to trial, and the evidence was critical to the prosecution or the defense (*id.* at 31–32).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.* at 29–31).

Respondent argues that to the extent Petitioner raises a due process claim, in addition to his ineffective assistance of counsel claim, the claim is unexhausted, because Petitioner did not fairly present it to the state courts (doc. 17 at 82–84).  With regard to the ineffective assistance of counsel claim, Respondent concedes Petitioner presented it to the state courts, and states, "it appears that

Petitioner may have exhausted this claim," but Respondent again expressly preserves the exhaustion defense (*id.* at 82, 89).

With regard to the merits of the ineffective assistance of counsel claim, Respondent argues the trial transcript demonstrates that the State submitted a total of four separate exhibits into evidence that consisted of electronic recordings:  State's Exhibit 4,  a CD containing recordings of two telephone calls; State's Exhibit 5, a CD containing recordings of five telephone calls; State's Exhibit 6, a covert videotape of events recorded inside Mr. Seale's residence on November 12, 2003; and State's Exhibit 8, an audiotape of State's Exhibit 6 (doc. 17 at 85, (citing Ex. C at 51–52, 60–62)).

Respondent argues the trial record reflects that prior to every such recorded exhibit being played for the jury, its exhibit number was announced in open court on the record (doc. 17 at 85, (citing Ex. C at 73, 76, 82, 84, 85, 88–89, 101, 102, 155)).  Each time before State's Exhibit 4 and 5 were played for the jury, the trial transcript reflects:  "(Whereupon, **the recording** was played and reported as follows: . . ." (doc. 17 at 85 (citing Ex. C at 73–74, 76–79, 82–83, 84–87, 101–04, 156) (emphasis added)).  Respondent asserts that with but two exceptions, each time when State's Exhibit 4 and 5 were finished playing for the jury, the trial transcript reflects:  "(Conclusion of **tape**.)" (doc. 17 at 85–86 (citing Ex. C at 73–74, 76–79, 82–83, 84–87, 101–04, 156) (emphasis added)). Respondent asserts State's Exhibit 6 was played once for the jury, during which it was stopped and restarted multiple times while Mr. Seale testified regarding its contents (doc. 17 at 86 (citing Ex. C at 88–98)).  Respondent points out that prior to State's Exhibit 6 being published, the trial transcript reflects:  "(Whereupon the **video** was played and reported as follows: . . ." (doc. 17 at 86 (citing Ex. C at 89) (emphasis added)).  Thereafter, each time State's Exhibit 6 was restarted after being stopped during Seale's testimony, the trial transcript reflects:  "(The **video** was played.)"  (doc. 17 at 86 (citing Ex. C at 89–98) (emphasis added)).

Respondent argues that while the exhibit number of every such recorded exhibit was announced in open court on the record prior being played for the jury, conspicuously absent therefrom is any mention of State's Exhibit 8, the audiotape which is the subject of the instant claim (doc. 17 at 86 (citing Ex. C at 73, 76, 82, 84, 85, 88–89, 101, 102, 155)).  Respondent thus argues that while State's Exhibit 8 was admitted into evidence, it was never played for the jury during trial

(doc. 17 at 86).  Further evidence that the audiotape was never played during trial is the prosecutor's statement during closing argument:

> Now, you saw the tape, you listened to it and you are going to have an opportunity to take the videotape back, State Exhibit 8 is the audio track portion, you will be able to go back and listen to this as well.  Again, this is just a recording of that same audio track.  And you can decide for yourself whether this is actually a better version to listen to than what was on the videotape.

(Ex. C at 204–05).  Respondent contends that although Petitioner asserts he actually listened to State's Exhibit 8 during trial, it certainly was not in the presence of the jury (doc. 17 at 86–87).  Respondent further argues that whether the jury ever listened to State's Exhibit 8 during its deliberations is unknown (*id.* at 87).

Respondent also points out that, as was noted in the post-conviction court's order, at close of the State's case, Petitioner engaged in the following colloquy with the trial court as to his decision not to testify:

> THE COURT:  And you understand that if you had testified in this case, that you would have been subject to cross-examination by Mr. Pitre just like your attorney has cross-examined the State's witnesses?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And after talking with your attorney, is it your decision that you do not want to testify?
>
> THE DEFENDANT:  That's correct.
>
> THE COURT:  And are you satisfied with the defense that Mr. Pinkerton has provided you in this case?
>
> THE DEFENDANT:  Absolutely.

(Ex. C at 167).  Respondent cites this as evidence that although Petitioner represents that it was during trial that he learned of the better quality audiotape and only then realized the need for his own testimony to rebut the clearer tape, he said nothing of this during the court's inquiry (doc. 17 at 87).  Respondent argues Petitioner never identified, either to the state courts or this court, what portion of the videotape was unintelligible, what the audiotape revealed that was unintelligible on the videotape, or what his testimony would have been (*id.*).  Respondent contends that for these reasons,

Petitioner has failed to demonstrate that the state court's adjudication of his claim was contrary to or an unreasonable application of <u>Strickland</u>.

> 1.      Clearly Established Federal Law

As previously discussed, the clearly established federal standard governing claims of ineffective assistance of counsel is the <u>Strickland</u> standard.

> 2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 7 in his amended Rule 3.850 motion (Ex. P at 29).  The state circuit court denied the claim as follows:

> The record reveals that there was more than one tape played that contained conversations between Defendant and other persons. Defendant fails to allege specifically which tape was of a different quality or what he would have said to refute the statements heard.  However, the Court finds no grounds to allow Defendant to amend his claim, because the record does not show that Defendant was prejudiced by a better-quality tape.  The record does not reflect that there were any large portions of inaudibility of any of the tapes that referenced Defendant, which would constitute prejudice.[fn.14 (citing to pages 84, 86 and 107 of the trial transcript)] Defendant cannot prove a reasonable probability that the outcome of the trial would have changed, based upon his testimony.[fn.15 (noting that Petitioner chose not to testify on his own behalf and citing page 167 of the trial transcript)] Therefore, Defendant is not entitled to relief on these claims.

(Ex. Q at 41–42).

Petitioner appealed the decision to the First DCA and included this issue in his initial brief (Ex. S).  The First DCA affirmed the decision without written opinion (Ex. V).

During trial, Wayne Pittman, a member of the technical surveillance unit of the Escambia County Sheriff's Office, testified that State's Exhibit 8 was an audio recording of the videotape (Ex. C at 59–61).  He stated it was the same event as depicted on the videotape, "It's just on a different medium at the same time." (*id.* at 62).  State's Exhibits 6 and 8 (the videotape and the audiotape) were admitted into evidence without objection (*id.*).  The trial transcript contains no indication that Exhibit 8 was published to the jury (*see* Ex. C).  But even if the jury listened to the audiotape during deliberations, Petitioner failed to show he was prejudiced by it.  Although he alleges he would have prepared to testify to explain or refute the statements heard on the audiotape if he had heard the intelligible portions of the tape prior to trial, he does not allege what he would have explained or refuted.  Therefore, he has not shown a reasonable probability that the jury would have acquitted

him had counsel objected to admission of the audiotape. In light of his failure to make this showing, he has not demonstrated that the state court's adjudication of his claim was contrary to or an unreasonable application of Strickland.

      F.    Ground Six: "Cumulative *Strickland* error as a result of trial counsel's ineffectiveness resulted in Petitioner being denied a fair trial."

      Petitioner contends that considering the cumulative effect of defense counsel's representation, it is clear that counsel's representation fell below that of reasonably competent counsel (doc. 5 at 33). Furthermore, there is a reasonable probability that but for counsel's error (considered individually and cumulatively), the outcome of trial would have been different (*id.*).

      As to exhaustion, Respondent again concedes that Petitioner presented this claim to the state courts, but expressly states it is not "conceding or otherwise waiving" the exhaustion defense (doc. 17 at 91–92). Respondent contends the Supreme Court has not held that distinct constitutional claims may be cumulated to grant habeas relief (*id.* at 92). Therefore, Petitioner cannot establish that the state court's denial of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 92–94).

      In his amended Rule 3.850 motion, Petitioner raised as Ground 8 the same claim he presents here (Ex. P at 30). He cited State v. Gunsby, 670 So. 2d 920, 924 (Fla. 1986) in support of his claim (*id.*).[8] The state circuit court summarily denied the claim on the ground that Petitioner failed to establish ineffective assistance as to any of his individual claims; therefore, his cumulative error claim failed as well (Ex. Q at 42). Petitioner appealed the decision to the First DCA and included this issue in his initial brief (Ex. S). The First DCA affirmed the decision without written opinion (Ex. V).

---

      [8] In Gunsby, the Florida Supreme Court held that the effect of admitted violations of Brady v. Maryland, 373 U.S. 83 (1963) by the State (the State failed to disclose at the time of trial in a murder prosecution that a key eyewitness had adjudication withheld on four criminal charges in exchange for his testimony so that he would not be discredited and was arrested on new burglary charges before trial, and another important witness was arrested for violating probation before she testified), and ineffective assistance provided by the defendant's trial counsel in failing to discover exculpatory evidence (that the brother of the murder victim was well known drug dealer who was in trouble over drug debts rather than a hardworking convenience store owner as he was portrayed at trial, that victim's brother and the only other eyewitness to the murder told police that they did not know who did shooting, and that other alleged eyewitnesses, who did not testify at trial, named two other individuals as perpetrators), when considered cumulatively, created a reasonable probability of different outcome and required that defendant's conviction be vacated. 670 So. 2d at 923–24.

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[9]  Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[10] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.  *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing

---

[9] The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished).  The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

[10] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[11]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, *supra*; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007).  Thus, Petitioner must show error with respect to at least two of his individual claims.

---

[11] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  *See* Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007).  The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  *See* Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland.  *See* Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

As previously discussed, none of the alleged errors of trial or appellate counsel, considered alone, approaches the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative error" claim. *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* Ballard v. McNeil, — F. Supp. 2d —, 2011 WL 1103888, at 30–31 (N.D. Fla. Mar. 25, 2011) (same); Rasley v. Buss, No. 5:08cv368/RH/EMT, 2011 WL 2358650, at *32–32 (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation Adopted at* 2011 WL 2293383 (N.D. Fla. June 9, 2011); Whitfield v. McNeil, No. 5:07cv120/RS/EMT, 2010 WL 1930007, at *22–23 (N.D. Fla. Apr. 12, 2010) (unpublished), *Report and Recommendation Adopted at* 2010 WL 1930012 (N.D. Fla. May 13, 2010); Walls v. McNeil, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished).

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 5) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18<u>th</u> day of July 2011.


<u>/s/ *Elizabeth M. Timothy*                                     </u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**        Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**